28616. CITY OF ROME *v.* WRIGHT.

DECIDED FEBRUARY 7, 1941.

*Lanham & Parker,* for plaintiff in error.
*Maddox & Griffin,* contra.

SUTTON, J. O. M. Wright brought suit against the City of Rome and Southern Railway Company to recover damages on account of injuries sustained by the alleged concurrent negligence of the defendants. A general demurrer filed by the City of Rome was overruled and no exception was taken. A general demurrer of the Southern Railway Company was sustained, and in *Wright* v. *Southern Railway Co.,* 62 *Ga. App.* 316 (7 S. E. 2d, 793), the judgment of the trial court was affirmed. The petition alleged substantially, as stated in the reported case, that "North Avenue is a public street in the City of Rome and intersects the right of way of the railway company at right angles, the street going under the railroad tracks in an underpass, and that as a part of said underpass concrete walls had been constructed on the side, with the railroad tracks above and across the street. The tracks approach the street on either side thereof by means of a fill some twenty feet higher than the street, which fill stops the natural flow of water on the east side of the fill and causes it to flow into a ditch immediately next to said fill on said right of way, and then in a northerly direction along said fill and right of way to said street. At the intersection of the street and the ditch the railway has constructed, to carry off said water, a culvert eight and one-half feet wide, and eleven and one-half feet deep, and approximately twenty feet long. This culvert goes under the street for its entire width. As a result of the construction of this culvert a deep chasm is created at the edge of the street, eleven and one-half feet deep and eight and one-half feet wide. There were no guard rails, barriers, or anything else erected to prevent persons walking along said street from inadvertently falling or stumbling therein. The city had built a curb and guttering on the south side of the street, parallel thereto, four and one-half inches higher than the traveled

portion of the street, which curb was twenty-six inches from the edge of the culvert, and had placed no light there to indicate the edge of the culvert. At the time of the injury complained of, the city had dug a ditch in the center of the street and had left it open, and in doing so had thrown all of the dirt therefrom onto the south side of the street along said ditch, making in the street an embankment two feet high and leaving only seven feet open for travel on the south side of the street. There were no sidewalks along this street. The plaintiff alleged that while he was walking along said street at night in an easterly direction, and when he had reached the intersection of the street, the right of way, and the culvert, he met an automobile going in a westerly direction at a speed of fifty miles per hour, and that to avoid being struck by this automobile he stepped to his own right and to the south side of the street, and when he did so he was precipitated into said culvert and sustained injury; further, that there was no guard rail on the side of the street, or anything else to warn the plaintiff of the existence of the hole."

The ruling on the general demurrer of the City of Rome, not having been excepted to, became the law of the case that the city was negligent in not keeping its street reasonably safe for a pedestrian by night and by day as required by law. The evidence sustained substantially the allegations of the petition, and the verdict in favor of the plaintiff was authorized. It is contended by the plaintiff in error that the evidence of the plaintiff himself bars him from recovery, in that it shows that by the exercise of ordinary care he could have avoided the consequences of the defendant's negligence, the plaintiff having testified: "As I walked along this place, and just about as I got to the east end of the culvert or under the culvert, I noticed an automobile approaching, and he was going in a westerly direction towards the silk mill. In other words. I was meeting one there. I could not judge the speed of that automobile. It was going fast, I expect around fifty to sixty miles per hour. Of course, as you go through the culvert there is not a thing in the world but concrete walls on either side of that street. I couldn't tell it if that automobile slowed down at all. If I had remained in the traveled portion of the street I suppose I would have been struck by that automobile if he hadn't climbed up on that dirt with his car. To avoid being struck I run out from under

the trestle. His lights had me blinded and I stumbled over that curb there or wall and went into this culvert. . . As I came under the trestle or the culvert, when I first saw the car going down North Avenue going west, looked to be about two blocks away. I thought I had time to get through the culvert with that car approaching, and came on through the culvert, knowing there was no way to step aside on either side. . . Sometimes I would go by this place two or three times a week, and again it might be a month. As to my being perfectly familiar with the curb and the culvert and with all that dirt, and knowing this ditch was there, I knew there was one there, but I never stopped and looked down as to how it was. As to my knowing it was there and there was a curb there and a slab on the other side of the curb, I didn't pay any attention to it. As to there being no reason why I couldn't have, I don't look over to the side of the road when going along. I look straight ahead."

It is axiomatic that questions of negligence will not be resolved by the courts except in plain and indisputable cases, and we do not think that the testimony relied on takes it out of the general rule. The question at issue is whether or not the plaintiff, seeing an approaching automobile two blocks away, should, in the exercise of ordinary care, have refrained from entering the underpass, in doing which and to avoid being struck by the automobile as it came upon him he found it necessary to jump to the side of the roadway, in consequence of which he stumbled across the curb and was precipitated into a deep ditch with resulting injuries. Under the existing circumstances it can not be said as a matter of law that the plaintiff was barred from a recovery by his own negligence. Had there been a guard rail, or at least a sufficient light placed by the city, he might reasonably have been able to avoid stumbling across the curb and falling into the ditch below, and it does not necessarily follow from the evidence that he created an emergency. Whether or not he was negligent in assuming that he could safely proceed through the underpass, as negligently maintained, before being placed in a position of peril was, we think, a question for the jury. The trial court did not err in overruling the defendant's motion for new trial.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*